**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § § | **MDL Docket No. 07-1842-ML** |
| | § | |
| **THIS DOCUMENT RELATES TO: Scott v. Davol No. 1:07-cv-01919-ML** | § § | **Chief Judge Mary M. Lisi** |

## AMENDED COMPLAINT

Plaintiff Robert M. Scott, by and through undersigned counsel, brings this products liability action against Defendants Davol, Inc. and C.R. Bard, Inc. as follows:

### I. Introduction

1.1 Plaintiff Robert M. Scott brings this products liability action against Davol, Inc. and C.R. Bard, Inc. to recover compensatory and punitive damages arising out of the implantation of a defective Composix® Kugel Mesh Patch (referred to herein as "Kugel Mesh Patch" or the "Product") into his body on October 4, 2005 at the Baptist Memorial Hospital, Golden Triangle located within Columbus, Mississippi.

### II. Parties

2.1 Plaintiff Robert M. Scott is an adult resident citizen of Aberdeen, Mississippi.

2.2 Defendant Davol, Inc. ("Davol") is a Rhode Island corporation which maintains its principal place of business at 100 Sockanossett Crossroad, Cranston, Rhode Island 02920, and may be served with process via its

registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. Davol is the manufacturer of the Kugel Mesh Patch which is made subject of this action.

2.3 Defendant C.R. Bard, Inc. ("Bard") is a New Jersey corporation which maintains its principal place of business at 730 Central Avenue, Murray Hill, New Jersey 07974-1139, and may be served with process via its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. Bard is the corporate parent and/or primary stockholder of Davol and participates in the manufacture and distribution of the Kugel Mesh Patch. In addition, Bard manufactures and supplies Davol with material that forms part of the Kugel Mesh Patch.

## III. Jurisdiction & Venue

3.1 This is an action between citizens of different states and involves money damages in excess of $75,000.00. Consequently, subject matter jurisdiction exists in the federal courts pursuant to 28 U.S.C § 1332.

3.2 This court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391 because a substantial portion of the events which give rise to this action occurred in whole or in part within this district, and Defendants regularly transact business within this district.

## IV. Factual Allegations

### A. Plaintiff's Hernia Repair Surgery

4.1 On or about October 4, 2005, Plaintiff underwent a hernia repair surgery at the Baptist Memorial Hospital, Golden Triangle, located within

Columbus, Mississippi. During the course of this procedure, Dr. Gerry L. Jeffcoat implanted within Plaintiff a Composix® Kugel Mesh Patch.

4.2 Plaintiff's hernia returned approximately three (3) to four (4) months after the Kugel Mesh Patch was installed. Ultimately, Plaintiff had his Kugel Mesh Patch removed on May 9, 2007 by Dr. Guy R. Voeller, a Memphis, Tennessee physician.

4.3 Upon removal, it was discovered that the Kugel Mesh Patch's "memory recoil ring" had broken.

**B. Product History**

4.4 Defendants submitted their 510k Application to the Federal Drug Administration ("FDA") on January 22, 2001. Following this 510k Application, Kugel Mesh Patch was authorized by the FDA as a Class II medical device.

4.5 Immediately after the Kugel Patches were placed on the market, Defendants began receiving actual notices of memory ring failures and Kugel Patch defects. Defendants actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Plaintiff, Plaintiff's physicians, and general public.

4.6 After the defective and dangerous Kugel Patch was already place on the market, Defendants conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, Defendants failed to properly

conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or “dissatisfied” results. These complaints and concern of the physician surveyors were actively concealed by Defendants from Plaintiff, Plaintiff’s surgeons, and the public at large.

4.7 The Composix Kugel Patch hernia repair product implanted in Plaintiff was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

4.8 No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problems at the plant, Defendants found the corrective measures to be ineffective and the process still not in control. Defendants were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Plaintiff, Plaintiff’s physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

4.9 During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marked increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, Defendants waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. Defendants actively and intentionally chose not to immediately inform Plaintiff, Plaintiff’s

physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. Defendants waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

4.10 On December 22, 2005, a Class I recall (issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the device) was issued for many sizes of Kugel Mesh Patches, including the size installed into Plaintiff's body only two (2) months earlier.

4.11 The Kugel Mesh Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

4.12 The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that Defendants:

a. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

b: misidentified numerous Kugel Patch complication events;

c: failed to apply the product quality hold and release procedure on a timely basis;

d: failed to properly follow the procedures for conducting design validation review;

e: failed to identify all actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;

f: failed to provide full information which they knew regarding numerous Kugel Patch complaints;

g: failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;

h: failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic database.

4.13 On March 24, 2006, the initial Class I recall of the Kugel Mesh Patch was expanded to include several additional sizes of the patch and numerous additional lots of the defective hernia mesh patch. The recall was further expanded on January 10, 1007 to encompass further production lots of the defective product.

## V. Causes of Action

### Cause of Action No. 1: Negligence

5.1 Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

5.2 At all material times, Defendants had a duty to exercise reasonable care in all aspects of the design, manufacture, testing, labeling, marketing, sale and provision of adequate warnings regarding the use of the Kugel Mesh Patch so as to ensure the safety of the Product and to ensure that the consuming public, including Plaintiff, obtained accurate information and instructions for the safe use of the Product.

5.3 Defendants failed to exercise ordinary care in the design, manufacture, sale, testing, quality assurance, quality control and distribution of the products into interstate commerce in that Defendants knew or should have known that the Product created a high risk of unreasonable, dangerous breakage of the "memory recoil ring" and patch migration which could result in permanent injury.

5.4 Defendants were negligent in the design, manufacture, testing, advertising, warning, marketing and sale of the aforesaid product in the following particulars, to wit:

a. Failing to use due care in the design and manufacture of the Product so as to avoid risks to the Plaintiff when such Product was used for its intended purpose;

b. Failing to accompany its Product with proper warnings regarding all possible adverse effects associated with the use of its Product, the comparative severity and duration of such adverse effects, and inaccurate reflection of the symptoms, scope and severity of the side effects;

c. Failing to provide adequate information to medical care providers as to the appropriate use of the Product;

d. Failing to warn Plaintiff prior to actively encouraging the sale of the Product(s) orally or in writing about (1) the possibility of adverse events; (2) the possibility of becoming disabled as a result of using the Product; and (3) that such adverse effects might result in a serious personal injury and additional surgery;

e. Failing to adequately test or warn about the possible adverse effects caused by the use of the Product; and

f. In such other and further particulars as will be proven at trial.

5.5 Upon information and belief, Defendants continued to market the aforesaid Product, despite the fact that Defendants knew or should have known that the Product caused unreasonable, dangerous health effects, which many users would be unable to remedy by any means, and when there were alternative methods to manufacture the Product.

5.6 Defendants knew or should have known that consumers such as Plaintiff would suffer foreseeable injury as a result of Defendants' failure to exercise ordinary care as described herein.

5.7 At all material times, Defendants knew of the defective nature of its Product as set forth herein, and continued to design, manufacture, market and sell its Products so as to maximize sales and profits at the expense of public health and safety, and as such Defendants' conduct exhibits a wanton and reckless disregard for human life; and, Defendants exhibited such an entire want to care as to establish that its actions were a result of fraud, actual malice and a conscious and deliberate disregard of foreseeable harm to the Plaintiff herein, thereby entitling the Plaintiff to punitive damages.

**Cause of Action No. 2: Failure to Warn**

5.8 Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

5.9 The Product manufactured and/or supplied by Defendants was at all times unaccompanied by proper warnings concerning all possible adverse side effects including, but not limited to, the comparative severity, scope and duration of adverse effects. As such, Defendant violated Miss. Code Ann. § 11-1-63(c).

5.10 After Defendants knew or should have known of the risk of injury from the use of its Product, they failed to provide adequate warnings to users or consumers of the Product, and continued to aggressively promote the Product, and as a direct result thereof, the Product designed, manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warning and/or instructions.

5.11 Upon information and belief, as a producing cause of legal result of the defective condition of the Product as designed, manufactured, and/or supplied by Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants, Plaintiff sustained the damages and injuries set forth herein.

5.12 At all material times, Defendants knew of the defective nature of their Product and continued to design, manufacture, market and sell the Product so as to maximize sales and profits at the expense of public health and safety, and as such, Defendants' conduct exhibits such an entire want of care as to establish its actions were willful, reckless, a result of fraud, actual malice, and the conscious and deliberate disregard of foreseeable harm to Plaintiff thereby entitling Plaintiff to punitive damages.

**Cause of Action No. 3: Design and/or Manufacturing Defect**

5.13 Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as fully set forth herein.

5.14 At all material times, the aforesaid Product manufactured by Defendants was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the Product deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, and the defective condition rendered the Product unreasonably dangerous to the Plaintiff, and the defective and unreasonably dangerous condition of the Product proximately

caused the damages for which recovery is sought in this action. As such, Defendants violated Miss. Code Ann. § 11-1-63(a)

5.15 Alternatively, the aforesaid Product designed by Defendants was defective in that the Defendants knew, on in light of reasonably available knowledge or in the exercise of reasonable care should have known , about the danger that caused the Plaintiff's damage, and the Product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. As such, Defendants violated Miss. Code Ann. § 11-1-63(f).

5.16 Upon information and belief, that aforesaid Product was, at the time it left Defendants' control, a defective Product unreasonably dangerous for use, and resulted in injury to the Plaintiff as alleged herein.

5.17 The defective and unreasonably dangerous condition of the aforesaid Product was the proximate cause of the injuries sustained by the Plaintiff resulting in the damages and injuries set forth herein.

5.18 At all material times, Defendants actually knew of the defective nature of its Product as set forth herein and recklessly continued to design, manufacture, market and sell their Product so as to maximize sales and profits at the expense of public health and safety, and they exhibited such an entire want to care as to establish its actions were willful, wanton, reckless, fraudulent, malicious, and exhibited a conscious and deliberate disregard of foreseeable harm to Plaintiff, thereby entitling Plaintiff to punitive damages.

**Cause of Action No. 4: Express Warranty of Merchantability**

5.19 Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

5.20 Defendant expressly warranted that the aforesaid Product was safe for use and Plaintiff justifiably relied upon said express warranties.

5.21 The Product was defective and unreasonably dangerous to the Plaintiff and other similarly situated users, and said defective and unreasonably dangerous condition caused Plaintiff's damages. Accordingly, Defendants have violated Miss. Code Ann. § 11-1-63(a).

**Cause of Action No. 5: Implied Warranties**

5.22 Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

5.23 Mississippi law recognizes an action for breach of implied warranties of safety, merchantability and fitness. *Bennett v. Madakasira*, 821 So.2d 794, 808 (Miss. 2002). Defendants have violated these implied warranties as follows:

a. Defendants impliedly warranted to prospective purchasers and users, including Plaintiff, that the aforesaid Product was safe, merchantable, and fit for the ordinary purposes for which such goods are used.

b. Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Product was of merchantable quality and safe and fit for its intended use.

c. Upon information and belief, and contrary to such implied warranties, said Product was not of merchantable quality or safe or fit for its intended use because the Product was and is unreasonably dangerous and unfit for the ordinary purpose for which it was used as previously described herein.

5.24 As a direct and proximate result of the breach of implied warranties by Defendants, Plaintiff suffered and will continue to suffer injury, harm and economic loss as alleged herein.

**Cause of Action No. 6: Negligent Misrepresentation by Commission**

5.25 Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

5.26 Defendants falsely represented to Plaintiff that the aforesaid Product was safe when used as instructed. These representations, that the Products was safe for its intended use when used as instructed and labeled, were false as the Product was in fact dangerous to the health of Plaintiff when used as intended.

5.27 Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of the Product, and otherwise failed to exercise reasonable care in communicating the information to Plaintiff.

5.28 In reasonable reliance upon Defendants' misrepresentations, Plaintiff was induced to, and did, use the ingested Product.

5.29 As a direct and proximate result of Defendants' misrepresentations, Plaintiff sustained the damages and injuries set forth herein.

**Cause of Action No. 7: Fraudulent Misrepresentation by Commission**

5.30 Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

5.31 In their course of business, Defendants designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

5.32 At the time of the design, manufacture, and sale of the Composix Kugel Patch, and more specifically at the time Plaintiff received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

5.33 Defendants were aware of the dangerous and defective condition of the products and intentionally withheld this information from Plaintiff, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had a risen.

5.34 Defendants fraudulently presented to Plaintiff, Plaintiff's physicians and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel Patch could and would cause injuries such as those suffered by Plaintiff.

5.35 Plaintiff and his physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

5.36 As a direct and proximate result of Plaintiffs' reliance on Defendants fraudulent misrepresentations and concealments. Plaintiff was seriously and permanently injured.

5.37 The conduct of Defendants in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Defendants and others from similar conduct.

**Cause of Action No. 8: Fraudulent Misrepresentation by Omission**

5.38 Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

5.39 Defendants misrepresented the mechanical soundness and reliability of the Kugle Composix Hernia Patches to the general public through promotional and marketing campaigns. Defendants continued this misrepresentation for an extended period of time, without disclosing material information regarding the defective, hazardous, and harmful complications relating to the Kugel Composix Hernia Patches.

5.40 Defendants took advantage of the limited ability Plaintiff had to discover Defendants' strategic and intentional concealment of the defects in their Kugel Composix Hernia Patches.

5.41 Defendants concealed these design and/or manufacturing defects from the public by withholding information pertaining to the inherent design

and/or manufacturing defects and high risks of failure relating to the Kugel Composix Hernia Patches, and presenting the devices as sound and reliable.

5.42 Defendants' intentional misrepresentations and omissions were made willfully, wantonly or recklessly to Plaintiff, the public at large, and Plaintiff's surgeons to induce the purchase of Defendants' Kugel Composix Hernia Patch over other mesh repair systems on the market.

5.43 Defendants knew or should have known of the high risk the Plaintiff would encounter by unwittingly agreeing to have implanted one of Defendants' defectively designed and/or manufactured Kugel Composix Hernia Patches.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Robert M. Scott prays that he be refunded all costs of his use of the Composix® Kugel Mesh Patch; that he be awarded compensatory, consequential, and punitive damages due and owed him; that he be compensated for any and all medical management and future and past medical expenses he may incur; that he be compensated for his attorneys' fees, expenses, interest and costs of this action; that he be awarded any extraordinary, declaratory or injunctive relief as permitted by law as necessary to assure that Plaintiff has an effective remedy; and for such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 3rd day of January 2008.

/s/ William M. Quin, II
William M. Quin, II (MS Bar # 10834)
**THE LANGSTON LAW FIRM, P.A.**
Post Office Box 787
Booneville, MS 38829
Telephone: 662-728-3138
Facsimile: 662-728-1992
wquin@langstonlaw.com
***Attorney for Plaintiff Robert M. Scott***

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2008, the forgoing *AMENDED COMPLAINT* was electronically filed with the clerk of this court and notice of same provided to counsel of record via the Court's ECF system.

/s/ William M. Quin, II
William M. Quin, II